UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD J. ADAMS,

                              **Plaintiff,**

                 v.                                                   5:04-CV-789
                                                                             (FJS/GJD)

**AT&T CORP.,**

                              **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF SIDNEY P. COMINSKY**<br>1500 State Tower Building<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | JANET M. IZZO, ESQ. |
| **PHILLIPS LYTLE LLP**<br>One HSBC Center, Suite 3400<br>Buffalo, New York 14203<br>Attorneys for Defendant | PAUL K. STECKER, ESQ. |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff originally filed his complaint in state court on June 18, 2004, asserting the following state-law causes of action: (1) fraudulent misrepresentation, (2) negligent misrepresentation, and (3) breach of contract. On July 8, 2004, Defendant filed its Notice of Removal with this Court, on the ground that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempted Plaintiff's claims. Plaintiff requested leave to amend his complaint on September 21, 2005, and his proposed amended complaint included

additional causes of action for recovery of ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and an ERISA promissory estoppel claim. By Order dated October 7, 2005, Magistrate Judge DiBianco granted Plaintiff's motion insofar as he sought to include a § 1132(a)(1)(B) cause of action but denied his motion to add an ERISA promissory estoppel claim due to the prejudice that it posed to Defendant and the need for additional discovery. *See* Dkt. No. 13. Plaintiff appealed from that Order, *see* Dkt. No. 14, and, by Order dated March 13, 2006, this Court (Mordue, J.) denied the appeal and affirmed the Order, *see* Dkt. No. 27.[1]

Currently before the Court is Defendant's motion for summary judgment on Plaintiff's state-law and ERISA claims related to calculation of his pension benefits.

## II. BACKGROUND

Defendant and its predecessors employed Plaintiff from 1968 until October 1991. As a result of his employment, Plaintiff became a vested participant in the applicable AT&T pension plan. However, Defendant dissolved the department that Plaintiff managed in 1991. Therefore, during the period from February 1991 to October 1991, Plaintiff worked at a lower-paying "occupational" position with Defendant while he looked for other managerial work. At that time, NCR hired Plaintiff.[2] As a result of his employment with NCR, Plaintiff became a vested

---

[1] By Order dated July 13, 2006, Judge Mordue recused himself, and the Clerk of the Court randomly reassigned this case to Judge Scullin.

[2] Plaintiff states that NCR and AT&T were separate and distinct organizations and competitors. However, Defendant asserts that AT&T bought NCR in 1991 and spun it off in 1997. Regardless of which of these statements properly characterizes the relationship between AT&T and NCR, there is no dispute that NCR was not a participating employer in the AT&T pension plan.

participant in the applicable NCR pension plan.

During the fall of 1996, members of Defendant's management team began to recruit Plaintiff. During that recruitment process, Plaintiff told AT&T Operations Manager John Brzuszkiewicz that he would only return to work at AT&T if AT&T made it as though he had never left AT&T and set his pension as if he had never left AT&T. In response, Plaintiff reports that Mr. Brzuszkiewicz stated that Plaintiff's pension benefits would be "'as if there was never a break in service'" and "'everything would be as if [he] never left AT&T.'"[3] *See* Defendant's Memorandum of Law at 8 (quotation omitted). Defendant employed Plaintiff again starting on December 17, 1996, until some time in 2004.

Pursuant to its pension plan, Defendant calculates an employee's pension, in part, by determining his average annual compensation for the relevant employment period. In doing so, the Plan contains a provision governing periods of time during which the employee earned no compensation from AT&T:

> (ii) For purposes of determining an Employee's average annual Compensation for any applicable averaging period:
>
> (A) if during such averaging period there was any period included in the Employee's Term of Employment for which the Employee received no Compensation, the Employee shall be considered to have earned Compensation during such non-compensated period at the same annual basic rate of pay which the Employee earned immediately preceding such period . . . .

*See* Affidavit of Daniel P. Feldman ("Feldman Aff."), sworn to October 25, 2005, at Exhibit "A"

---

[3] For purposes of this motion, Defendant accepts as true Plaintiff's testimony about Mr. Bruzuszkiewicz's statements.

at 21.

An employee earns "Compensation" only during the "Term of Employment," which is defined as the period of employment for AT&T or another "Participating Company." *See id.* at 9, 22. NCR is not listed as a "Participating Company." *See id.* at 116. These provisions are also summarized in the 1998 Summary Plan Description, which describes the "Special Update" to the Plan.[4]

In addition, the Plan specifically addresses employees whom AT&T hired after September 20, 1991, following periods of employment for NCR, referring to NCR by its later name, AT&T Global Information Solutions Company ("GIS"): "In no case shall an employee's GIS service be considered or taken into account in any manner whatsoever in determining the amount of the pension payable from the Plan to the employee . . . ." *See id.* at 45. This provision was explained in the 1996 Summary Plan Description, which further explained that an employee's NCR pension would be paid separately.

In 1997, Plaintiff requested that Defendant provide him with a calculation of his pension benefits. When he received the calculation, he believed that AT&T incorrectly calculated his benefits because it did not use his salary at NCR to calculate his average compensation for his time away from AT&T. Therefore, on May 5, 1998, Plaintiff's counsel filed a claim with the Plan. AT&T denied Plaintiff's claim in writing on May 11, 1998. Thereafter, Plaintiff filed the current action.

---

[4] The Special Update refers to changes to the management pension structure that Defendant imposed shortly after it rehired Plaintiff. The Plan changed from a traditional defined-benefit plan to a hybrid cash-balance plan, presumably for the purpose of lowering the company's payment obligations.

## III. DISCUSSION

As a basis for its summary judgment motion, Defendant asserts that ERISA preempts Plaintiff's state-law claims. In addition, Defendant argues that the Court should grant its motion for summary judgment with respect to Plaintiff's ERISA benefits claim because the Plan's terms preclude using his NCR salary to compute his benefits. Finally, Defendant contends that an oral modification that is contrary to the Plan's express language cannot support a claim for benefits.

In response, Plaintiff contends that ERISA does not preempt his state-law claims because he is not claiming that Defendant breached the Plan, nor is he seeking payment of benefits. Rather, he asserts that he is claiming that Defendant breached a collateral employment agreement with terms that Mr. Brzuszkiewicz negotiated and that he is seeking compensatory damages. *See* Plaintiff's Response at 13-15 (citing *McNamee v. Bethlehem Steel Corp.*, 692 F. Supp. 1477 (E.D.N.Y. 1988)) (other citations omitted). Furthermore, Plaintiff argues that an AT&T pension administrator effectively admitted that AT&T improperly calculated his pension because she could not explain one of the numbers used in the calculation. Finally, Plaintiff claims that he has a valid promissory estoppel claim.

### A.   Preemption of Plaintiff's state-law claims

ERISA "supersede[s] any and all State laws insofar as they may . . . relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Supreme Court has consistently read this provision as broad, but not absolute. *See Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 9 (2d Cir. 1992) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 132, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990)) (other citations omitted). Therefore, a state law or state-law cause of action relates to a

benefit plan if it merely "'has a connection with or reference to such plan,'" even if the effect on the plan is only indirect. *Id.* (quotation and other citation omitted).

In *Dunham-Bush*, the employer asked the plaintiff to transfer from the United Kingdom to its Connecticut affiliate. *See id.* at 7. However, the plaintiff was concerned about perceived inadequacies in the affiliate's retirement plan. *See id.* To convince the plaintiff to transfer, the employer made an oral promise that it would supplement has retirement benefits based on the package he expected to receive in the United Kingdom. *See id.* When he did not receive the promised benefits, the plaintiff asserted causes of action for breach-of-contract and negligent misrepresentation. *See id.*

In holding that ERISA preempted the plaintiff's claims, the Second Circuit rejected the plaintiff's argument that his level of benefits was not related to any ERISA plan:

> Although appellant attempts to fashion his complaint as one relating only to his pension benefits, and not to any plan, the existence of Dunham-Bush's pension plan would be a critical factor in establishing the extent of liability under state common law. In reality, his suit represents an attempt to supplement the plan's express provisions and secure an additional benefit. [His] cause of action therefore relates not merely to his benefits, but to the essence of the plan itself.

*Id.* at 10 (citation omitted).

Furthermore, the fact that the employer's oral promise induced the plaintiff's transfer did not save his claims from preemption due to the purposes behind ERISA's writing requirement – to protect employees from having their benefits diluted by oral modifications and to protect the plan's actuarial soundness. *See id.* (quoting *Cefalu*, 871 F.2d at 1294) (other citation omitted).

*Dunham-Bush* is almost factually indistinguishable from this one, the only difference

being that in this case Plaintiff also asserts a fraudulent misrepresentation claim.[5] Moreover, although Plaintiff styles his action as one for compensatory damages, any calculation of his damages depends entirely on the existence of NCR's and AT&T's ERISA plans and their terms.[6] As in *Dunham-Bush*, "his suit represents an attempt to supplement the plan's express provisions and secure an additional benefit." *Dunham-Bush*, 959 F.2d at 10. Stated another way, "if [Plaintiff's] claims were stripped of their link to the pension plans, they would cease to exist."[7] *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir. 1992). Applying these well-established principles to the facts of this case, the Court grants Defendant's motion for summary judgment on Plaintiff's state-law claims on the ground that ERISA preempts those claims.

---

[5] Courts have also held that ERISA preempts state-law fraud and fraudulent representation claims. *See, e.g., Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1219-20 (5th Cir. 1992); *Barkdoll v. H & W Motor Express Co.*, 820 F. Supp. 410, 415 (N.D. Iowa 1993).

[6] The Court also notes that the cases that Plaintiff cites are inapposite. First, every one of these cases predates the Second Circuit's decision in *Dunham-Bush* and several predate the Supreme Court's decision in *Ingersoll-Rand*. Moreover, Plaintiff relies principally on *McNamee v. Bethlehem Steel Corp.*, 692 F. Supp. 1477 (E.D.N.Y. 1988), and *Sandler v. New York News Inc.*, 721 F. Supp. 506, 512 (S.D.N.Y. 1989), which are not binding on this Court.

[7] Plaintiff also asserts that "[t]here is no doctrine that poses a greater threat to access to justice in this country then preemption. When successful, the federal preemption defense completely wipes out the rights of individuals to obtain compensation for their damages, regardless of the extent of the defendants' wrongdoing." *See* Plaintiff's Response at 12. However, the lack of an available remedy is not a valid reason to ignore the Congressional purposes for preemption. *See Dunham-Bush*, 959 F.2d at 11.

**B.     Plaintiff's ERISA claim**

   *1. Oral promises*

   For the purposes of this motion, Defendant accepts, as true, Plaintiff's statement that Mr. Brzuszkiewicz told him that AT&T would treat him "'as if there was never a break in service'" and "'everything would be as if [he] never left AT&T.'"  *See* Defendant's Memorandum of Law at 8 (quotation omitted).  However, in his deposition, Plaintiff admitted that no one at AT&T told him that AT&T would use his NCR salary to calculate his AT&T pension benefits.  *See* Deposition of Ronald J. Adams ("Adams Tr."), dated August 22, 2005, at 22-29.  However, no matter what Mr. Brzuszkiewicz orally promised Plaintiff, it is well-established that such promises are unenforceable and cannot alter the written terms of an ERISA plan.  *See Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002) (citation omitted).  Accordingly, as a matter of law, Plaintiff cannot rely on these oral promises to alter the terms of AT&T's management pension plan.

   *2. Written documents*

   Plaintiff cites three written documents, which he asserts confirm the terms on which his retirement benefits would be based.  First, Plaintiff cites a sheet of paper on which Mr. Brzuszkiewicz wrote monetary figures when he recruited Plaintiff.  *See* Affidavit of John E. Brzuszkiewicz ("Brzuszkiewicz Aff."), sworn to November 30, 2005, at Exhibit "A."  Second, Plaintiff cites a memorandum from AT&T General Manager William Creamer to AT&T Sales Vice President Mary E. Livingston requesting approval of an "Off Cycle Salary Merit Increase" of $8,000 for Plaintiff.  *See* Affidavit of Ronald J. Adams ("Adams Aff."), sworn to December 2,

2005, at Exhibit "D." Third, Plaintiff cites an e-mail from AT&T Eastern Region Resource Manager Karen Donovan to Mr. Brzuszkiewicz, in which she states in part, "I was told that Ron would bring with him all service credit. There would be no penalty and would be no requirement to bridge any of his previous servise [sic]. It would be the same as it was with NCR from the beginning." *See* Brzuszkiewicz Aff. at Exhibit "B."

Contrary to Plaintiff's arguments, these documents do not support his assertion that employees at AT&T promised him a pension calculated, in part, using his salary at NCR. First, the monetary figures that Mr. Brzuszkiewicz wrote indicate a side-by-side comparison of Plaintiff's annual salary, bonus structure, and perquisites at both NCR and AT&T. The only item that even remotely concerns his pension is the single word "benefits." Second, Mr. Creamer's memorandum concerns only Plaintiff's annual salary and does not mention pension benefits. Third, Ms. Donovan's e-mail is the only document that concerns pension benefits. In this document, she merely relates that the Pension Service Center told her that Plaintiff would not be penalized. This e-mail, however, does not make any promise that AT&T would change the terms of the pension plan to grant Plaintiff greater benefits than any other employee. Moreover, this document was not addressed to Plaintiff, and there is no indication that he was aware of its existence or contents prior to this litigation. In fact, Plaintiff admitted in his deposition that no one at AT&T told him that Defendant would use his NCR salary to calculate his AT&T pension benefits. *See* Adams Tr. at 22-29.

In addition, the Plan provides that only the Board of Directors or its delegate may amend the Plan. *See* Feldman Aff. at Exhibit "A" at 115. Thus, Plaintiff must establish that one of these three documents complied with the Plan's amendment procedure. *Cf. Normann v. Amphenol*

-9-

*Corp.*, 956 F. Supp. 158, 162-63 (N.D.N.Y. 1997) (holding that, although a change does not need to be contained in formal plan documents, an employer's actions to amend must meet the plan's requirements: i.e., if the plan states generally that the company reserves the right to amend the plan, less formal means of amendment may suffice compared to a plan with a more specific amendment procedure). However, two of Plaintiff's documents do not address the pension issue at all, and Plaintiff does not allege that Ms. Donovan's e-mail is a valid amendment pursuant to the Plan. Accordingly, the Court finds that Plaintiff has not established a genuine issue of fact with respect to amendment of the plan.

### *3. Plaintiff's assertions about an error in computing his benefits*

Plaintiff asserts that Defendant erred in computing his pension benefits by not using his NCR salary during the relevant period and by misstating his years of service. In support of this assertion, he states that AT&T Pension Plan Administrator Laurie L. Hanson conceded that she could not explain one figure in Defendant's calculation of Plaintiff's average annual compensation:

> Q: . . . However, you can't as you sit here today explain some, at least one, perhaps more of the numbers that were used to calculate the cash balance number?
>
> A: Correct.

*See* Deposition of Laurie L. Hanson, dated July 12, 2005, at 88.

However, Plaintiff provided the Court with only six pages of Ms. Hanson's eighty-eight

page deposition, and he provided none of the questioning immediately preceding this exchange.[8] Furthermore, Plaintiff undermines his complaint by explaining in his Statement of Material Facts that Defendant used the weekly wage that he earned as an occupational employee prior to leaving AT&T in 1991 in its calculations. *See* Plaintiff's Statement of Material Facts at ¶ 6. Defendant explains that the $3,225.53 figure about which Plaintiff complains is his weekly occupational employee wage prior to leaving AT&T multiplied by 4.35 weeks per month pursuant to the Plan. *See* Defendant's Reply at 14. Therefore, despite the implication of Plaintiff's discussion of Ms. Hanson's deposition testimony, she did not admit that Defendant erred in calculating his pension benefits.

In addition, the Court rejects Plaintiff's assertion that Defendant erred in its calculations by misstating his years of service and not using his salary at NCR. As noted above, the Plan provides that, "[i]n no case shall an employee's [NCR] service be considered or taken into account in any manner whatsoever in determining the amount of the pension payable from the Plan to the employee . . . ." *See* Feldman Aff. at Exhibit "A" at 45. Furthermore, as noted above, the Plan provides that, during periods in which an employee earned no compensation from a participating employer, Defendant would use his rate of pay for the immediately preceding period.[9] *See id.* at 21. Accordingly, the Court finds that Plaintiff has failed to raise a genuine

---

[8] Plaintiff submitted only pages 1, 18, 19, 25, 32, and 88 of Ms. Hanson's deposition.

[9] The 1998 Summary Plan Description contains the following provision:

> The amount of your pension may be affected by absence during the Special Update pay base averaging period. The following rules apply in determining the Compensation used for your period of absence: . . . [the compensation used is] [y]our annual basic rate of

(continued...)

issue of material fact concerning Defendant's calculation of his retirement benefits.[10]

## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: June 5, 2007
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge

---

[9](...continued)
        pay in effect immediately preceding your absence, plus any pension
        includable lump sums paid to you during your absence and during
        the pay base averaging period[.]

*See* Affidavit of Paul K. Stecker, sworn to October 25, 2005, at Exhibit "C" at 6.

[10] Plaintiff devotes more than three pages in his Response to an ERISA promissory estoppel claim. However, in his October 7, 2005 Order, Magistrate Judge DiBianco thoroughly discussed this claim and denied Plaintiff leave to amend his complaint to include this cause of action. *See* Dkt. No. 13. This Court (Mordue, J.) affirmed that Order on March 13, 2006. Therefore, there is no need for the Court to address this issue.